ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROLAND CHANG (CABN 271511)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7108
    Fax: (415) 436-7027
    Roland.Chang@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-cr-00035 JSC |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| ELMO VINCENT DANIELS, | |
| Defendant. | |

## I.    INTRODUCTION

On January 23, 2024, a grand jury in the Northern District of California returned a one-count indictment charging Elmo Vincent Daniels with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  On November 11, 2023, when the police pulled Daniels over in the Tenderloin neighborhood of San Francisco for driving on an expired vehicle registration, he was again found to be in possession of a firearm and loaded ammunition magazine, as well as various drugs including methamphetamine and cocaine.  Daniels also had an active warrant out of San Bruno, California.

Daniels, a convicted felon, has repeatedly shown that he is a danger to the community and that

he refuses to comply with the law.  In total, he has *eight felony convictions*.  Daniels has three convictions for "crimes of violence" under Penal Code § 273.5 for willfully inflicting corporal injury resulting in a traumatic condition on a current or former spouse, cohabitant, fiancée, and/or mother of his child.[1]  For his October 2018 conviction, Daniels woke up the victim while she was asleep next to her seven-month old daughter and then viciously assaulted her by punching her in the face and head multiple times.  After that, he grabbed the victim by the neck and dragged her to another room while yelling profanities.  He pulled out a black handgun and pointed it at her; he then pepper-sprayed her before fleeing the scene.  For his May 2022 conviction, Daniels ignored a protective order to forcibly enter the victim's residence to violently assault the victim by kicking, punching, and biting her.  Daniels then grabbed the victim by the neck and strangled her until she was unconscious.  When the police arrived on the scene, they saw Daniels holding a knife and arrested him.

In addition, Daniels has two convictions for felon in possession of a firearm, *i.e.*, the same offense in this case, one at the state level and another in this district for which he received a thirty-seven month federal prison sentence.  While on federal supervised release, he violated his conditions of release by committing battery and received a six-month sentence for his violation.

The charged offense is consistent with Daniels' violent criminal history and repeated disregard for the law.  Before the indictment, he faced state charges relating to his November 2023 conduct.[2]  The state court ordered him detained prior to trial because he "[p]oses a risk to public safety", finding that the "public safety element in this analysis is very strong" in favor of detention, and "[t]here is clear and convincing evidence that there's a substantial likelihood that his release could result in either great bodily injury to others and he's threatened others with great bodily injury."  Those identical factors remain present here.  Accordingly, to safeguard the community and ensure Daniels' appearance at trial, the government requests that he be detained pending trial.

---

[1] The Ninth Circuit has held that convictions under California Penal Code § 273.5 are "a categorical crime of violence" under the sentencing guidelines. *United States v. Walker*, 953 F.3d 577, 579-80 (9th Cir. 2020).

[2] The San Francisco District Attorney's Office dismissed the state charges after this case was filed due to federal adoption of the case.

## II.   FACTUAL BACKGROUND

### A.   Daniels' Lengthy History of Violent Crimes and Repeated Disregard for Court Orders

For nearly three decades, Daniels has accumulated a series of federal and state felony convictions. On February 14, 1996, Daniels was convicted under Health and Safety Code § 11351.5 for possessing for sale or purchases for purposes of sale cocaine base, receiving forty-five days in jail and three years of probation. The court subsequently revoked his probation, and he received a sentence of three years in state prison on October 24, 1996. On December 20, 2005, he was convicted under Health and Safety Code § 11350(a) for possession of a controlled substance, receiving nine days in jail and three years of probation. On May 9, 2006, Daniels was convicted under Vehicle Code § 10851(a) for vehicular theft, receiving fourteen days in jail and five years of probation.

In fact, this is not the Daniels' first federal criminal offense in this district. On October 5, 2007, Daniels was convicted of an 18 U.S.C. § 922(g)(1) offense, and Judge Charles R. Breyer imposed a thirty-seven month sentence along with a three-year term of supervised release. The judgment specifically stated that Daniels "shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." While on federal supervised release, Daniels committed battery in violation of Penal Code § 242 and received a six-month sentence for his supervised release violation.

Since his release from federal custody and supervision, Daniels repeatedly violated the law by engaging in violent behavior. Specifically, he was convicted three times under Penal Code § 273.5 for willfully inflicting corporal injury resulting in a traumatic condition on a current or former spouse, cohabitant, fiancée, and/or mother of his child. On April 30, 2013, Daniels was convicted under Penal Code § 273.5 for the *first* time, for which he received a sentence of 365 days in jail and five-years' probation. On that same day, he also received a conviction under Penal Code § 245(a)(1) for assault.

On October 24, 2018, Daniels was convicted under Penal Code § 273.5 for the *second* time, receiving a two-year suspended state prison sentence—ultimately serving 120 days in jail, and four-years' probation. In that case, on June 27, 2018, at approximately 3:45 am, Daniels entered the victim's bedroom and woke her up while she was sleeping with her seven-month old daughter by screaming: "I hate you bitch!" and "Fuck you bitch!" He then physically assaulted the victim by punching her face

and head multiple times with closed fists. After that, he grabbed the victim by the neck and dragged her to another room while yelling profanities, including calling the victim a "punk ass bitch". Daniels then pulled out a black semi-automatic handgun and pointed it at the victim; he also sprayed the victim's face with pepper spray. Daniels subsequently fled from the victim's residence.

On May 17, 2022, Daniels was convicted under Penal Code § 273.5 for the *third* time, for which he received a five-year and eight-month prison sentence.[3] On August 24, 2019, while on probation and ignoring an active protective order, at approximately 4:30 am, Daniels forcibly entered the victim's residence and chased after her as she attempted to flee to the fire escape and yell for help. Daniels caught up to the victim and started kicking and biting her, as well as punching her multiple times with his fist. Daniels then grabbed the victim by the neck and strangled her. As the victim pushed Daniels away, he bit on the victim's finger and continued to strangle her until she lost consciousness. After regaining consciousness, the victim saw Daniels run to the kitchen and grab a knife as he thought the police were nearby. The police eventually arrived on the scene, saw Daniels holding the knife, and arrested him.

In between those felony convictions for violent crimes, Daniels was convicted for several other state offenses. On May 4, 2016, he was convicted under Penal Code § 29800(a)(1) for illegally possessing a firearm as a convicted felon, receiving one hundred and eight days in jail and thirty-six months of probation. He subsequently committed a probation violation for that conviction. And on April 11, 2019, he was convicted for contempt of court and violating a protective order.

B.     **The Charged Offense is Consistent with Daniels' History**

On November 11, 2023, at approximately 7:40 am, two SFPD officers pulled over Daniels for driving on an expired vehicle registration in the Tenderloin neighborhood in San Francisco. During the traffic stop, SFPD ran a check that showed an active misdemeanor warrant for Daniels out of San Bruno, California and saw in plain view a small baggie containing suspected narcotics in the front driver side cupholder. Based on that, SFPD arrested Daniels and conducted a search of his vehicle during which

---

[3] On the same day, Daniels also pled guilty to a felony offense under Penal Code § 422, California's criminal threats statute, and two misdemeanor offenses.

they found a firearm and loaded ammunition magazine, as well as cocaine and methamphetamine. Lab reports showed "very strong support" that DNA on the firearm grip "originated from" Daniels, *i.e.*, the likelihood of obtaining these DNA results from Daniels is 46.2 billion times greater than from a random, unrelated person.

The San Francisco District Attorney's Office charged Daniels with several state offenses, including being a felon in possession of a firearm. At his December 1, 2023 preliminary hearing, the state court ordered Daniels detained prior to trial because he "[p]oses a risk to public safety", finding the "public safety element in [its] analysis is very strong" in favor of detention, and that there "[t]here is clear and convincing evidence that there's a substantial likelihood that [defendant's] release could result in either great bodily injury to others and he's threatened others with great bodily injury."

### III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk—the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's

release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g., United States v. Salerno*, 481 U.S. 739, 743 (1987).

## IV.   ARGUMENT

### A.   Daniels Is a Danger to the Community

#### 1.   The Nature and Circumstances of the Offense Demonstrate That Daniels is a Danger to the Community

At his arrest, Daniels, a convicted felon, possessed a loaded firearm with five rounds of ammunition. That alone is sufficient to find that Daniels poses a danger to the community. *See, e.g., United States v. Brewer*, 2013 WL 791312, at *2 (N.D. Cal. 2013) (carrying loaded firearm weighed in favor of detention because it "indicate[d] that [the defendant] may be violent and pose a danger to the community"). The danger posed by firearms offenses, including those under 18 U.S.C. § 922, is well established. *See United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (Congress passed § 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship.") (citation omitted).

#### 2.   Daniels' History and Characteristics Support That He is a Danger to the Community

Daniels' violent history further establishes that he is a danger to the community. As described above, Daniels has been convicted ***three times*** under Penal Code § 273.5 for willfully inflicting corporal injury resulting in a traumatic condition on a current or former spouse, cohabitant, fiancée, and/or mother of his child. For his October 2018 conviction, he entered the victim's bedroom while she was sleeping next to an infant in the middle of the night and physically assaulted the victim by punching her in the face and dragging her by the neck. He then pulled out a handgun and sprayed the victim's face with pepper spray. Daniels' conduct for his third May 2022 conviction was similarly violent, as he forcibly entered the victim's residence despite an active protective order and physically assaulted the

victim by kicking, biting, and punching her multiple times. After that, Daniels strangled the victim until she was unconscious and then picked up a knife to threaten her before SFPD showed up to arrest him.

In addition to his violent conduct, Daniels has demonstrated a continuing decision to illegally possess firearms and ammunition, posing an ongoing threat to public safety. He has received two convictions for felon in possession of a firearm, including one in this district in 2007 for which he received a thirty-seven month prison sentence and another in California state court in 2016. As the state court stated when analyzing Daniels' conduct for the charged offense, his disregard for the law makes it clear that "[t]here is clear and convincing evidence that there's a substantial likelihood that [defendant's] release could result in either great bodily injury to others and he's threatened others with great bodily injury."

### B. Daniels Is a Significant Flight Risk Because of His Past Conduct and Charged Offense

Separately, Daniels is a flight risk because: (i) he has a lengthy and consistent history of ignoring court orders and the law; and (ii) there is a reasonable probability of conviction. ***First,*** Daniels' repeated failures to comply with the law establish his flight risk. In other words, there is no evidence that Daniels will comply with conditions imposed by this Court. Daniels has ***eight felony convictions*** and has received significant prison time on multiple occasions, yet continues to violate the law. He has two convictions for felon in possession of a firearm, including one in this district, despite knowledge that his convicted felon status prohibits him from ever possessing a firearm or ammunition. In addition, he has three separate violent crime convictions under Penal Code § 273.5. At least one of those convictions involved him ignoring an active protective order for the victim's residence, which he forcibly entered and then proceeded to violently assault the victim, punching and kicking her, as well as strangling her to the point of unconsciousness.

***Second,*** Daniels has consistently failed to comply with probation and/or parole conditions upon release from custody. *See United States v. Santos-Flores,* 794 F.3d 1088, 1092 (9th Cir. 2015) (prior violation of supervised release terms supported defendant's status as flight risk). In 1996, the state court revoked his probation status after a felony drug conviction, which resulted in three years in state prison. After his prior 18 U.S.C. § 922(g)(1) conviction in this district, Daniels violated his conditions of release

by committing battery and received an additional six-month sentence for his supervised release violation.  Likewise, after his 2016 state conviction for felon in possession for a firearm, he committed a probation violation.  Another example is his April 16, 2019 conviction for contempt of court and violating a protective order.  In short, Daniels has repeatedly shown he will not respect conditions ordered by the court, and detention is necessary to ensure his appearance at future proceedings and trial.

*Finally,* Daniels is a significant flight risk because there is a reasonable likelihood of conviction.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").  Given the location of the firearm and DNA evidence connecting Daniels with the firearm, there is a reasonable likelihood that Daniels will face a significant term of imprisonment.  Indeed, the government's preliminary analysis suggests that Daniels' Guidelines range will be 120-150 months.  This is the most significant custodial sentence Daniels has ever faced, and a possible sentence of this length presents him with a strong incentive to flee.

## V.   CONCLUSION

For the foregoing reasons, there is no set of conditions that will reasonably ensure the safety of the community or ensure Daniels' appearance at court proceedings.  Accordingly, the Court should order Daniels detained pending trial.

DATED:  January 29, 2024              Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Roland Chang*
ROLAND CHANG
Assistant United States Attorney