UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 3:24-cr-00035-JSC-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: MOTION TO SUPPRESS, ADDITIONAL DISCOVERY REQUEST, AND EVIDENTIARY HEARING REQUEST** |
| ELMO VINCENT DANIELS, | |
| Defendant. | Re: Dkt. No. 39 |

Defendant Elmo Daniels contends two officers violated the Fourth Amendment by conducting a prolonged traffic stop and an unreasonable search. He moves to suppress all evidence resulting from the search and seizure of his person and vehicle. (Dkt. No. 39.)[1] Alternatively, Mr. Daniels requests additional discovery on mobile databases and an evidentiary hearing. Having considered the parties' briefs and having had the benefit of oral argument on October 9, 2024, the Court concludes the traffic stop did not constitute an unconstitutional seizure and DENIES Mr. Daniels's related discovery request. Because contested issues of fact remain as to the lawfulness of the search, the Court GRANTS Mr. Daniels's evidentiary hearing request to determine whether the officers had probable cause to search Mr. Daniels's vehicle and whether Mr. Daniels consented to the search.

## BACKGROUND

On November 11, 2023, two San Francisco Police Department ("SFPD") officers pulled over Mr. Daniels for driving with a five-month expired vehicle registration. (Dkt. No. 41-1 at 9.) Officer Prasadi approached the driver side of the vehicle, told Mr. Daniels his vehicle registration

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   had expired, and requested his driver's license. (*Id.*) Mr. Daniels could not find his license, so he
2   verbally gave the officer his name and birthdate. (*Id.*) At his patrol vehicle, Officer Prasadi
3   conducted three queries using the California Law Enforcement Telecommunications System on
4   his mobile digital terminal. (*Id.*)

5       First, Officer Prasadi used the information Mr. Daniels provided to conduct a multi-
6   destination Query Name mask search. (Dkt. No. 41-1 at 59.) This search "automatically returned
7   results from several local, state, and federal databases, including SFPD's JUSTIS Person Inquiry
8   database, the Alameda County Warrant System, and other California and federal law enforcement
9   databases and systems." (*Id.* at 59-60.) The results showed prior felony and misdemeanor
10  contacts, potential of assault with a deadly weapon, and an open misdemeanor warrant in
11  California for larceny. (Dkt. No. 40-2 at 2; Dkt. No. 41-1 at 9.)

12      Second, Officer Prasadi searched Mr. Daniels's San Francisco criminal history using his
13  San Francisco criminal identification number, which gave a record of Mr. Daniels's arrests in the
14  City and County of San Francisco. (Dkt. No. 41-1 at 61.)

15      Third, Officer Prasadi searched Mr. Daniels's California record of arrests and prosecutions
16  using his California Criminal Identification and Information number. (*Id.*)

17      In total, Officer Prasadi spent approximately six minutes and 30 seconds, from receiving
18  the information, walking to his patrol vehicle, running the searches, and returning to Mr. Daniels's
19  vehicle. (Dkt. No. 41-1, Ex. B (Prasadi Bodyworn Camera ("BWC") Footage) 2:25-8:52.) When
20  he returned, Officer Prasadi told Mr. Daniels, "You're good to go." (*Id.* at 8:56.) At that point,
21  the officer noticed "a small baggie containing a white substance in the front driver side
22  cupholder." (Dkt. No. 41-1 at 10.) He pointed at the baggie, and asked Mr. Daniels about it.
23  (Prasadi BWC Footage at 9:03.)

24      Officer: What's this here, man? [Points] Right there.
25      Mr. Daniels: [Unintelligible response.]
26      Officer: You got anything else in here?
27      Mr. Daniels: [Shakes head.] No.
28      Officer: Alright.

|   |   |
|---|---|
| 1 | Mr. Daniels:  That's right here, man. |
| 2 | Officer:  Alright, so this is what we're gonna do. |
| 3 | Mr. Daniels:  Throw that shit away.  I don't even care. |
| 4 | Officer:  I'm not too worried about it, alright?  I'm all for people getting second chances. |
| 5 | But because of this, I have probable cause to search your vehicle.  Do you have |
| 6 | anything crazy in here? |
| 7 | . . . |
| 8 | Mr. Daniels:  [Picking up the baggie from the cupholder.]  This is lactose, this is not even |
| 9 | shit, dude.  What the fuck do you think this is? |
| 10 | Officer:  Alright, leave it there, leave it there, man. |
| 11 | Mr. Daniels:  Do you want it?  Dude, here. |
| 12 | Officer:  Yeah.  [Extends right hand.]  Here, give it to me. |
| 13 | Mr. Daniels:  This is lactose, man. |
| 14 | Officer:  Give it to me then. |
| 15 | Mr. Daniels:  This is crazy, bruh.  [Hands baggie of white substance to officer.] |

(Prasadi BWC Footage at 9:03-10:03.)

Officer Prasadi placed the baggie on the vehicle.  His incident report states, "[u]pon giving me the baggie, I observed the white substance to consist of small crushed and crystalized white substance.  I know from my training and experience that this is consistent with the appearance of methamphetamine."  (Dkt. No. 41-1 at 10.)  After more discussion, Officer Prasadi reiterated "because it's clearly narcotics, it's clearly in visible, plain sight, I have probable cause to search the vehicle at this point."  (Prasadi BWC Footage at 11:09.)

Officer Prasadi ultimately arrested Mr. Daniels.  (Dkt. No. 41-1 at 11.)  The officers searched the vehicle, finding a 9mm semiautomatic firearm and a loaded ammunition magazine wedged between the driver's seat and center console, as well as additional methamphetamine and cocaine.  (*Id.*)

## DISCUSSION

Mr. Daniels moves to suppress all evidence obtained, contending the officers violated his

3

Fourth Amendment rights by (1) unreasonably prolonging the traffic stop with database queries, and (2) unreasonably searching Mr. Daniels's vehicle without a warrant. (Dkt. No. 39.) The government meets its burden in establishing Officer Prasadi's database queries did not unreasonably prolong the stop. But because there are contested issues of fact as to whether the officers unreasonably searched Mr. Daniels's vehicle, the Court GRANTS Mr. Daniels's request for an evidentiary hearing on this issue.

## I.     TRAFFIC STOP SEIZURE

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because a traffic stop temporarily detains an individual, a traffic stop "constitutes a 'seizure' of 'persons'" within the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Warrantless searches and seizures are presumptively "unreasonable" and "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The government bears the burden of proving a warrantless search or seizure falls within an exception of the warrant requirement. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).

Here, it is undisputed the traffic stop was lawful because Mr. Daniels's vehicle registration had expired. (Dkt. No. 41-1 at 9.) *See Whren*, 517 U.S. at 810 ("Traffic stops are lawful when 'the police have probable cause to believe that a traffic violation has occurred.'"). Mr. Daniels insists the stop became unlawful because the database searches unreasonably prolonged the stop. (Dkt. No. 39 at 9-14.) The Court disagrees for two reasons.

First, even had the officers unconstitutionally prolonged the traffic stop, the prolonged stop was not the but-for cause of the discovery of evidence. "A Fourth Amendment violation requires suppression of evidence only if the violation is the 'but-for' cause of the government obtaining the evidence." *United States v. Rosenow*, 50 F.4th 715, 736 (9th Cir. 2022) (citing *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)). For example, in *Rodriguez v. United States*, the case Mr. Daniels's relies upon, the dog sniff was the but-for cause of discovery of the evidence. 575 U.S. 348, 356 (2015). There, the officers unconstitutionally prolonged the traffic stop by conducting a

4

dog sniff, which the government conceded was not "an ordinary incident of a traffic stop." *Id.* at 356. The dog alerted to the presence of drugs, at which point the officers searched the defendant's vehicle and found methamphetamine. *Id.* at 352. So, the dog sniff was the but-for cause of the discovery of the narcotics the defendant moved to suppress. But for the dog sniff—the basis for the unreasonably prolonged traffic stop—the officers would not have discovered the narcotics.

Here, in contrast, Officer Prasadi's database searches—the conduct Mr. Daniels claims unreasonably prolonged the stop—are unrelated to the discovery of the evidence. Officer Prasadi did not base his probable cause determination on anything he learned from the database searches. And, the record shows by a preponderance of the evidence that any delay caused by the database searches was not the but-for cause of the evidence discovery. As the bodyworn camera footage shows, and Mr. Daniels does not dispute, the baggie with the white substance was in the driver-side cupholder since at least the beginning of the traffic stop. (Prasadi BWC Footage at 1:01, 9:02.) So, whether Officer Prasadi returned to Mr. Daniels's car after three minutes or six minutes is unrelated to the discovery of the white baggie. In other words, the duration of the traffic stop "had *no* effect on the government's ability to obtain the evidence." *See Rosenow*, 50 F.4th at 736; *see also United States v. Pulliam*, 405 F.3d 782, 791 (9th Cir. 2005) (holding the district court erred in suppressing a gun because the "indispensable causal connection between [the defendant's] detention and discovery of the gun has not been met," as defendant's unlawful detention "simply did not contribute or lead to the gun's discovery").

Second, the government meets its burden in establishing Officer Prasadi's database queries did not unreasonably extend beyond the traffic stop's mission. A traffic stop can "become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Similar to a *Terry* stop, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission,'—to address the traffic violation that warranted the stop, [] and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). The stop cannot last "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see Rodriguez*, 575 U.S. at 354. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably

5

should have been—completed." *Rodriguez*, 575 U.S. at 354. Otherwise, there must be "independent reasonable suspicion justifying each prolongation." *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015).

The first query—a DMV name index search accessing several databases—was consistent with the mission's scope. The "mission" of a traffic stop includes "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *See Rodriguez*, 575 U.S. at 355 (cleaned up). This search was reasonable because Mr. Daniels did not provide his driver's license, (Dkt. No. 41-1 at 9), so the officer used Mr. Daniels's name, birthdate, and gender to run the routine "persons check."

Mr. Daniels contends the first query violated *Rodriguez* because it was overbroad given that it returned additional results, but the cases he cites are distinguishable. *See United States v. Gorman*, 859 F.3d 706, 715 (9th Cir. 2017) (finding Fourth Amendment violation where traffic stop totaled "nearly half an hour" and involved questioning "unrelated to the traffic infraction"); *Evans*, 786 F.3d at 786 (finding Fourth Amendment violation when the traffic stop involved an "ex-felon registration check" that "in no way advanced officer safety" and instead facilitated investigation of another crime—whether the defendant was properly registered as a felon per state law).

The second and third queries—criminal history searches accessing local and state records—were also reasonable as a matter of binding Ninth Circuit precedent. Officers may extend traffic stops to check criminal history, which "is a negligibly burdensome precaution required for officer safety." *United States v. Hylton*, 30 F.4th 842, 846-48 (9th Cir.), *cert. denied*, 143 S. Ct. 393 (2022). "[C]onducting a criminal records check in connection with a traffic stop is objectively reasonable." *United States v. Taylor*, 60 F.4th 1233, 1241 (9th Cir. 2023). "[T]hat a driver is acting cooperatively does not prevent police from performing actions that are permissibly within the mission of a traffic stop." *Id.* Here, because the second and third queries checked Mr. Daniels's criminal history, the traffic stops were objectively reasonable. (Dkt. No. 41-1 at 61.)

Mr. Daniels argues the second and third queries violated California's policy directive

1  prohibiting officers from using mobile digital terminals to transmit criminal history during traffic
2  stops. (Dkt. No. 39 at 11 (relying on the Peace Officer Standards and Training workbook).) But
3  the workbook states, "Mobile Digital Terminals (MDTs) . . . *should* not be used routinely for the
4  transmission of criminal history information" because "transmissions by unsecured wireless
5  devices can be intercepted." (Dkt. No. 40-6 at 21 (emphasis added).) Even assuming the training
6  workbook is interpreted as Mr. Daniels's urges, "should" does not mean "must." Further, the
7  government contends the workbook does not prohibit law enforcement from *obtaining* criminal
8  records but instead cautions against *sending* criminal records from a mobile digital terminal to
9  another source. (Dkt. No. 41 at 19.) The Court finds this interpretation reasonable; otherwise,
10 officers could never conduct criminal history checks during traffic stops. Regardless, police
11 practices are not dispositive for determining constitutionality. *Whren*, 517 U.S. at 815 ("[P]olice
12 enforcement practices, even if they could be practically assessed by a judge, vary from place to
13 place and from time to time," but the Fourth Amendment is not so variable.). And the Ninth
14 Circuit has made clear criminal history checks are reasonable under the Fourth Amendment.
15 *Hylton*, 30 F.4th at 846-48; *Taylor*, 60 F.4th at 1241.

16     In sum, the Court concludes the traffic stop was not an unreasonable seizure. The criminal
17 history searches the officer ran are "objectively reasonable" in connection with a traffic stop, *see*
18 *Taylor*, 60 F.4th at 1241, and even if this were not the case, the traffic stop's duration was not the
19 but-for cause of Officer Prasadi discovering the baggie. The Court thus DENIES Mr. Daniels's
20 related request for discovery about "other databases . . . to more efficiently obtain the limited
21 information that was related to the mission of [the] traffic stop." (Dkt. No. 39 at 14.)

22 **II.   VEHICLE SEARCH**

23     Regarding whether the officers unconstitutionally searched Mr. Daniels's vehicle,
24 contested issues of fact remain. As stated in oral argument on October 9, 2024, factual disputes
25 remain on (1) whether Officer Prasadi had probable cause before seizing the baggie, and (2)
26 whether Mr. Daniels consented to handing Officer Prasadi the baggie. The Court thus GRANTS
27 Mr. Daniels request for an evidentiary hearing on these issues. *See United States v. Mejia*, 69 F.3d
28 309, 318 (9th Cir. 1995) (an evidentiary hearing is required "when the moving papers . . . show

that there are contested issues of fact relating to the lawfulness of a search").

## CONCLUSION

For the reasons discussed above, the Court GRANTS Mr. Daniels's evidentiary hearing request and DENIES his renewed discovery request pertaining to additional databases. The Court CONTINUES Mr. Daniel's motion to suppress in light of the evidentiary hearing.

**IT IS SO ORDERED.**

Dated: October 18, 2024

JACQUELINE SCOTT CORLEY
United States District Judge