UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ELMO VINCENT DANIELS,<br><br>Defendant. | Case No. 24-cr-00035-JSC-1<br><br>**ORDER RE: MOTION TO SUPPRESS FOLLOWING EVIDENTIARY HEARING**<br><br>Re: Dkt. No. 39 |

Pending before the Court is Elmo Daniels's motion to suppress. Previously, the Court concluded suppression was not warranted on the ground the traffic stop was an unreasonable seizure. (Dkt. No. 47.[1]) On February 25, 2025, the Court held an evidentiary hearing to consider Mr. Daniels's alternative argument for suppression: that the officer who conducted the traffic stop lacked probable cause to seize the baggie inside Mr. Daniels's car. (*Id.* at 7.) Having considered the parties' briefing and the evidence presented at the hearing, the Court DENIES Mr. Daniels's motion to suppress. Because the incriminating nature of the baggie was immediately apparent to the officer from his position outside but next to the car, seizure was justified under the plain-view doctrine.

**BACKGROUND**

On November 11, 2023, Officer Ryan Prasadi pulled over Mr. Daniels. (Dkt. No. 41-1 at 9.) The traffic stop is described in the Court's October 18, 2024 order, (Dkt. No. 47 at 1-3), and the Court incorporates that description by reference. Officer Prasadi ultimately arrested Mr. Daniels and, upon searching the vehicle, found a firearm. (Dkt. No. 41-1 at 11.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

In August 2024, Mr. Daniels filed a motion to suppress on two grounds. Mr. Daniels argued (1) Officer Prasadi unconstitutionally prolonged the traffic stop, and (2) Officer Prasadi conducted an unreasonable search when he ordered Mr. Daniels to hand him a baggie from inside the vehicle. (Dkt. No. 39 at 5.) In the alternative, Mr. Daniels requested an evidentiary hearing "for the government to meet its burden of proving that Prasadi had probable cause to search the baggie before commanding Daniels to hand it over to him." (*Id.* at 16.)

The Court heard argument on the motion to suppress. (Dkt. No. 44.) In its October 18, 2024 order, the Court found the government met "its burden in establishing Officer Prasadi's database queries did not unreasonably prolong the stop"; thus, suppression was not warranted under Mr. Daniels's first argument. (Dkt. No. 47 at 4.) As to Mr. Daniels's second argument regarding Officer Prasadi's seizure of the baggie, the Court found "contested issues of fact" and so granted Mr. Daniels's request for an evidentiary hearing on this issue. (*Id.* at 8.)

The evidentiary hearing was held on February 25, 2025. (Dkt. No. 56.)

## DISCUSSION

### I.   FINDINGS OF FACT

Based on the evidentiary hearing and the evidence in the record, the Court makes the following findings of fact[2]: (1) from his training and experience, Officer Prasadi was familiar with the appearance of fentanyl and the methods of packaging it; (2) from his training and experience, Officer Prasadi was familiar with the appearance of methamphetamine and the methods of packaging it; (3) when Officer Prasadi reapproached Mr. Daniels's vehicle after running the database queries, from his position next to the vehicle, Officer Prasadi saw a small press-lok baggie containing a white substance inside the cupholder closest to him, (4) based on his training and experience, Officer Prasadi believed the substance to be an illegal narcotic due to its packaging; (5) when Officer Prasadi held the baggie in his hands, he was able to get a closer look at the white substance; and (6) at that point, based on his training and experience, Officer Prasadi

---

[2] To the extent any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

1  believed the baggie contained methamphetamine.

## II. CONCLUSIONS OF LAW

Under the plain-view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if its incriminating character is not immediately apparent—the plain-view doctrine cannot justify its seizure." *Id.* at 376 (cleaned up).

In this case, the plain-view doctrine justified Officer Prasadi's seizure of the white baggie. Upon reapproaching the car after running the database searches, Officer Prasadi observed the baggie from outside the car. (Dkt. No. 41-1 at 9 ("I had a full and unobstructed view of the cup holder and its contents from my position outside the vehicle.").) So, Officer Prasadi "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *See Horton v. California*, 496 U.S. 128, 136 (1990).

Further, the "incriminating character" of the baggie was immediately apparent. This requirement focuses on whether the officer had probable cause. *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005). "[P]robable cause is a flexible, common-sense standard" that "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (cleaned up). While the probable cause determination "is objective," the Court "appl[ies] it to the actual and/or perceived belief of the law enforcement officer as he . . . engages in search and seizure." *Stafford*, 416 F.3d at 1076.

At the evidentiary hearing, Officer Prasadi testified he believed the baggie contained an illegal narcotic due to the substance's color and the small, clear press-lok baggie it was packaged in. He testified that based on his training and experience, including prior arrests and investigations involving illegal narcotics, illegal narcotics are commonly packaged in clear quarter- or dime-sized press-lok baggies. This testimony is consistent with the testimony Officer Prasadi provided

3

1   at a preliminary hearing involving the same traffic stop.  At the preliminary hearing, which

2   occurred approximately three weeks after the traffic stop, Officer Prasadi testified he recognized

3   the baggie in the cupholder to contain a narcotic given "[t]he way it was packaged in that small

4   baggie that is commonly known to be how narcotics are packaged in coercion [sic] with the white

5   substance that it contained."  (Dkt. No. 40-4 at 15-16.)  His testimony at the evidentiary hearing is

6   also consistent with his bodyworn camera footage.  At minute 9:02, a small baggie containing a

7   white substance is visible inside the car's cupholder.  (Dkt. No. 41-1, Ex. B (Prasadi Bodyworn

8   Camera Footage).)  Further, before Officer Prasadi issued any orders to Mr. Daniels related to the

9   baggie, Mr. Daniels picked up the baggie, providing Officer Prasadi an additional view of the

10  baggie's size and contents.  (*Id.* at 9:45, 9:47.)

11       Because the appearance of the baggie and its contents was consistent with illegal narcotics,

12  Officer Prasadi had probable cause to seize the baggie.  *See, e.g.*, *United States v. Nohara*, 3 F.3d

13  1239, 1242 (9th Cir. 1993) (finding probable cause when officer saw defendant "holding a meth

14  pipe containing white residue"); *Hollyfield v. United States*, 407 F.2d 1326, 1326 (9th Cir. 1969)

15  (finding probable cause for arrest when marijuana smoking paraphernalia was in plain view);

16  *United States v. Svarda*, No. 3:20-CR-00329-JD-2, 2021 WL 4951451, at *4 (N.D. Cal. Oct. 25,

17  2021) (finding probable cause where experienced officer "saw a baggie of white powder in plain

18  view on the floor of the car, which he concluded could be cocaine").  So, under the plain-view

19  doctrine, seizure was justified.[3]

20       This conclusion is not inconsistent with Officer Prasadi's report, which states:

21       > [u]pon giving me the baggie, I observed the white substance to consist
       > of small crushed and crystallized white substance.  I know from my
22     > training and experience that this is consistent with the appearance of
       > methamphetamine.
23

24  (Dkt. No. 40-1 at 9.)  The Court previously concluded one inference to be drawn from this

---

[3] In its October 18, 2024 order, the Court concluded there were questions of fact as to "whether Mr. Daniels consented to handing Officer Prasadi the baggie." (Dkt. No. 47 at 7.)  Having found the plain-view doctrine justified seizure of the white baggie, the Court need not address the consent issue.  Whether Officer Prasadi ordered Mr. Daniels to hand him the white baggie or Mr. Daniels did so voluntarily is irrelevant because Officer Prasadi could seize the baggie under the plain-view doctrine.

statement is that Officer Prasadi did not suspect the baggie contained evidence of a crime until he held it in his hand. But at the hearing, Officer Prasadi clarified that upon seeing the baggie in the cupholder, he suspected it contained an illegal narcotic, and upon seeing the substance more clearly when he held the baggie in his hand, he recognized the substance as methamphetamine. Although Officer Prasadi's report does not explicitly state he believed the baggie in the cupholder to be evidence of a crime, the evidence supports such conclusion.

So, Officer Prasadi did not violate the Fourth Amendment when he seized the baggie.

## CONCLUSION

For the reasons stated above, the Court DENIES Mr. Daniels's motion to suppress.

This Order disposes of Docket No. 39.

**IT IS SO ORDERED.**

Dated: March 6, 2025

JACQUELINE SCOTT CORLEY
United States District Judge