CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHRISTINE CHEN (CABN 327581)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-7291
 FAX: (415) 436-7234
 Christine.Chen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:24-CR-00035-JSC |
| Plaintiff, | ) **UNITED STATES' SENTENCING** ) **MEMORANDUM** |
| v. | ) Hearing Date: March 18, 2026 |
| ELMO VINCENT DANIELS, | ) Hearing Time: 10:00 a.m. ) Courtroom: 8, 19th Floor |
| Defendant. | ) Hon. Jacqueline Scott Corley |

## I.      INTRODUCTION

Courts have repeatedly admonished and warned Mr. Daniels that he cannot possess a firearm. *See*, *e.g.*, Dkt. 83 (Trial Stipulations) ¶ 22 (summarizing 2018 sentencing minutes for spousal injury conviction, stating Mr. Daniels "shall not knowingly possess any firearm"). Despite these admonishments, the instant case represents Mr. Daniels' *third* conviction for felon in possession with a gun. *See* PSR ¶¶ 1–2, 30, 33. Based on an analysis of the factors under 18 U.S.C. § 3553(a), the government respectfully requests that the Court sentence Mr. Daniels to 105 months of imprisonment, which is in the middle of the Guidelines range, to be followed by three years of supervised release.

U.S. SENTENCING MEMO                                    1
3:24-CR-00035-JSC

## II.   RELEVANT BACKGROUND

### A.  Criminal History

Mr. Daniels has amassed six misdemeanors and nine felonies over a little over two decades. *Id.* ¶¶ 24–36. Of note is his first federal felony conviction for felon in possession of a firearm in 2007, for which he received 37 months in custody and three years of supervised release. *Id.* ¶ 30. While on supervised release for that case, he was arrested for a domestic violence incident. *Id.* His supervision was then revoked and he was sentenced to six months in custody. *Id.* He sustained another felon in possession conviction, this time in state court, in 2016 and received 180 days in jail and then another 16 months in prison when his probation was revoked. *Id.* ¶ 33.

His criminal history also includes two convictions for possessing drugs for sale, *id.* ¶¶ 25, 28, and multiple convictions relating to domestic violence, *id.* ¶¶ 24, 32, 34, 36. This is not to mention his many arrests for offenses such as robbery, possession of drugs for sale, domestic violence, and battery. *Id.* ¶¶ 39–66.

### B.  The Instant Offense

On November 11, 2023, San Francisco Police Department officers pulled over Mr. Daniels for driving on an expired vehicle registration.  *Id.* ¶ 5. After a criminal history check and upon returning to the vehicle to tell Mr. Daniels he could leave, one of the officers then noticed a baggie of suspected methamphetamine in the front driver-side cupholder. *Id.* After Mr. Daniels finally exited the vehicle, law enforcement conducted a search of his vehicle and found a loaded semiautomatic firearm, a prescription bottle containing small baggies of cocaine, .22-caliber gun cartridges, a nail gun, baggies of white pills, and methamphetamine. *Id.* ¶ 6. Law enforcement later determined that the firearm had been stolen. *Id.* ¶ 8. At the time of the search, Mr. Daniels had previously been convicted of felonies and was prohibited from possessing firearms and ammunition. *Id.* The firearm and ammunition had traveled in interstate commerce. *Id.*

### C.  Procedural History

On January 23, 2024, a federal grand jury charged Mr. Daniels in a single-count indictment for felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *Id.* ¶ 1. He made his initial appearance on January 29, 2024. *Id.* ¶ 3. After a contested detention hearing on February 2,

2024, the Court ordered that he be detained. *Id.*; *see also* Dkt. 14 (Detention Order) at 7–8 (noting Mr. Daniels "engaged in an outburst, raised his voice, took his clothing off, and exhibited uncontrolled emotional reactions"). Mr. Daniels was found guilty after a bench trial on December 16, 2023. *Id.* ¶ 2.

**III.    SENTENCING GUIDELINE CALCULATION**

The government agrees with the Guidelines calculation set forth in the PSR, *id.* ¶¶ 13–21:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2K2.1(a)(2) | 24 |
|    -   Two prior convictions for crimes of violence | |
| Specific Offense Characteristics | + 2 |
|    -   Stolen firearm, U.S.S.G. § 2K2.1(b)(4)(A) | |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1 | - 2 |
| Total Offense Level | 24 |

Mr. Daniels's criminal history score is 12, meaning he falls into criminal history category V. *Id.* ¶ 38. Accordingly, the Guidelines range is 92–115 months. *Id.* ¶ 87.

**IV.    SENTENCING RECOMMENDATION**

**A.  Legal Standard**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)    the need for the sentence to protect the public from future crimes of the defendant;

(5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)    the need to provide restitution to any victims of the offense.

**B.  Recommended Sentence and Section 3553(a) Factors**

Probation has recommended that the defendant be sentenced to a term of imprisonment of 92 months to be followed by three years of supervised release. Upon consideration of the Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully recommends that the Court sentence the defendant to a 105-month term of imprisonment and three years of supervised release.

1.    <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense alone warrant a serious sentence that is at least in the Guidelines range. Of primary concern is the fact that this is Mr. Daniels's third time getting caught with a firearm, yet it does not appear that he is remorseful or fully understands the seriousness of his actions. According to the defense's psychological expert, Mr. Daniels claims to have purchased the gun for protection when the mother of one of his children was shot, and, unbeknownst to him, she told the assailant that Mr. Daniels would be retaliating; Mr. Daniels later heard that the assailant was looking for him.

Mr. Daniels's gun was loaded with five bullets.[1] PSR ¶ 6. He intended to use the gun to cause harm. Moreover, had the arresting officer not done his utmost to prevent the situation from escalating, the traffic stop underlying the instant offense could have turned deadly: Mr. Daniels, who has a history of violent outbursts, had a loaded firearm within easy reach. No good could come from his possession of this weapon.

The government further notes that Mr. Daniels was found with methamphetamine (in a cupholder next to the steering wheel) and cocaine (in a pill bottle on his person). *Id.* ¶¶ 6, 7. This suggests that, even if he was not high at the moment of arrest, it is highly likely he has been operating

---

[1] Law enforcement also found .22-caliber cartridges in Mr. Daniels's car, suggesting he may have had access to another gun.

U.S. SENTENCING MEMO                    4
3:24-CR-00035-JSC

his vehicle in an altered mental status.[2]

2.      History and Characteristics of the Defendant

Mr. Daniels' history and characteristics strongly support a significant sentence as well. The defense attributes his behavior to PTSD and substance abuse problems. While the government acknowledges that Mr. Daniels has gone through terrible experiences that may have contributed to his struggles, he appears to take little personal responsibility for the many convictions in his thirty-year-long criminal history. Worryingly, much of his conduct has been violent. He has multiple convictions and arrests for domestic violence. In relation to an arrest in 2016, he punched, choked, and held down a woman for not getting into a hot tub with him. *Id.* ¶ 44. In another arrest in 2017, he grabbed the neck of a woman, bit her, and pushed her baby, causing the baby to fall and hit her head. *Id.* ¶ 46. Hurting an innocent child did nothing to curb his aggression. His most recent conviction for inflicting corporal injury on a spouse or cohabitant in 2019 involved Mr. Daniels punching, kicking, biting, and strangling his partner at the time. *Id.* ¶ 36. He then strangled her, causing her to lose consciousness. *Id.* Mr. Daniels is almost fifty years old. Any one of his many arrests and convictions should have served as a wake-up call to change—to take his substance abuse treatment seriously, to address his PTSD diagnosis from 2018, to leave behind triggering environments. Instead, his conduct repeats and escalates.

3.      The Need for the Sentence to Afford Adequate Deterrence, Protect the Public from Future Crimes of the Defendant, and Promote Respect for the Law

A lengthy sentence is needed to deter the defendant from future criminal conduct and promote respect for the law. While the government agrees with the defense's expert that Mr. Daniels would benefit from comprehensive drug and psychiatric treatment, he has shown that treatment has not prevented him from re-offending in the past. After his last federal conviction for felon in possession with a gun, the Court ordered that he participate in mental health treatment as part of his supervised release. *Id.* ¶ 78. He received it through substance abuse counseling at Sharper Future. *Id.* Yet, less than six months after his supervision commenced, he was arrested for hitting his partner in the face, pulling

---

[2] Fifty-six percent of drivers involved in serious injury and fatal crashes tested positive for at least one drug. *Drug-Impaired Driving*, NHTSA, https://www.nhtsa.gov/risky-driving/drug-impaired-driving (last accessed Mar. 9, 2026) ("Cocaine and methamphetamine can make drivers more aggressive and reckless.").

her hair, and pushing her head into the wall. *Id.* ¶¶ 30, 41. The government considers Mr. Daniels to be particularly dangerous, especially because of his history of domestic violence.[3] As per Probation's recommendation, the Court must consider the need to protect the community given the defendant's history of violence.

### 4.    Avoiding Unwarranted Sentencing Disparities

JSIN data shows that other defendants charged with similar offenses and Mr. Daniel's total offense level and criminal history category received a median sentence of 92 months of imprisonment. *Id.* ¶ 103. It is unclear how many of these supposedly comparable defendants had any prior convictions for felon in possession, let alone two like Mr. Daniels, or any extended history of domestic violence like Mr. Daniels. Accordingly, the government believes a mid-range Guidelines sentence, just above the median sentence, is justified here.

### C.  Supervised Release Recommendation

A term of supervised release is not statutorily mandated here. *Id.* ¶ 88. However, the government believes that the maximum three years of supervised release should be imposed to ease Mr. Daniels's transition after imprisonment and to further rehabilitate him. When Mr. Daniels was last convicted of felon in possession in a federal court, he received three years of supervised release. *Id.* ¶ 30. It is clear another three years is needed now because his criminal behavior has not ceased. The government also agrees with all of Probation's recommended conditions of supervised release for the reasons described in the PSR.

//

//

//

---

[3] "An abusive partner's access to a firearm makes it five times more likely that a woman will be killed. Every year, over 750 American women are shot to death by intimate partners. Three out of five intimate partner homicides are committed with a firearm and nearly a third of mass shooters have a history of domestic violence." *Democratic Women's Caucus and Gun Violence Prevention Task Force Urge DOJ to Prioritize the Safety and Livelihood of Women by Limiting Domestic Abusers' Access to Guns*, Democratic Women's Caucus (June 9, 2025), https://democraticwomenscaucus.house.gov/news/documentsingle.aspx?DocumentID=388#:~:text=Every%20year%2C%20over%20750%20American,violence%2C%E2%80%9D%20the%20Members.

## V.   CONCLUSION

The government respectfully requests that the Court sentence Mr. Daniels to 105 months of imprisonment, which is in the middle of the Guidelines range, to be followed by three years of supervised release with all conditions recommended by Probation.

DATED: May 6, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____

CHRISTINE CHEN
Assistant United States Attorney